UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                              Plaintiff,

                                                        Case #11-CR-6181-FPG

v.                                                      DECISION AND ORDER

RAUL ABIDEL MARTINEZ,

                              Defendant.

_____

By text order dated October 28, 2011, this case was referred to United States Magistrate Judge Marian W. Payson, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B).  Dkt. #8.  The two count indictment in this case alleges that on August 23, 2011, Defendant Raul Abidel Martinez entered a bank with intent to commit a larceny, and that he robbed that bank in violation of 18 U.S.C. § 2113(a).  Dkt. #7.

Defendant's motion seeks to suppress statements that he made on August 23, 2011 to Rochester Police Department Officer Adam Radens, as well as to suppress testimony regarding a show-up procedure involving the Defendant that occurred on that same date.   Dkt. #44. Magistrate Judge Payson conducted a suppression hearing on November 4, 2013, where Officer Radens and David Salvatore, a former Rochester Police Department Investigator, testified.  After receiving post hearing submissions from the parties (Dkt. ##55, 56), Magistrate Judge Payson issued her Report and Recommendation on April 29, 2014, which recommends the denial of Defendant's suppression motions.  Dkt. #58.  On July 10, 2014, the Defendant timely objected to Magistrate Judge Payson's Report and Recommendation, Dkt. #61, and the government filed a response in support of the Report and Recommendation on July 17, 2014.  Dkt. #62.

Since the Defendant has filed objections, I must conduct a *de novo* review as to those portions of the Report and Recommendation to which objections have been made. *See* 28 U.S.C. § 636(b)(1)(C). In so doing, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

On the other hand, *de novo* review is not required of those portions of the Report and Recommendation where no objections were filed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) ("We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object.").

In her Report and Recommendation, Magistrate Judge Payson recommended that I deny Defendant's Motion to Suppress statements he made during an encounter with Officer Radens, finding that these statements were made spontaneously in response to a request for the Defendant to produce his identification, and would therefore be admissible under the pedigree exception to the *Miranda* requirement. *See, e.g., United States v. Adegbite*, 846 F.2d 834, 838 (2d Cir. 1988) (citations omitted). Defendant has not objected to this determination, and even if he had, I would still agree with Judge Payson that the statements are admissible. The uncontroverted testimony from Officer Radens established that the only question he asked of the Defendant was whether he had any identification on him. Officer Radens testified that in response to that question, the Defendant said "I do, it's in my wallet. I work for the CIA. I dropped the money back there. Did you see the money? My karate instructor also works for the CIA. He's the one that told me to bring the note to the lady at the bank. Did you see the note? And that he's also the one that

told me to go to the bank and get the money." Officer Radens did not ask the Defendant any questions about the bank robbery, the Defendant was not handcuffed or physically restrained, and no weapons were drawn. Officer Radens simply asked for identification, and the Defendant made spontaneous statements in response. On these facts, there is no basis for suppression.

The Defendant has objected to Magistrate Judge Payson's determination that the show-up procedure employed by law enforcement with the Defendant was not unduly suggestive. After reviewing[1] the matter *de novo*, I agree with Magistrate Judge Payson.

The facts regarding the show-up procedure that occurred on August 23, 2011 are drawn from the suppression hearing testimony, and are not in dispute. At approximately 2:06 p.m. that day, it was reported to the Rochester Police Department that the M&T Bank at 1385 Lyell Avenue had been robbed. Shortly after the robbery was reported, Officer Radens spotted the Defendant walking in the area of 1171 Lyell Avenue, within blocks of the bank that had just been robbed. The Defendant matched the broadcast description of the suspect, to wit, a light skinned male Hispanic with brown hair in his mid-twenties, thin build, wearing a grey shirt and pants. Officer Radens also observed that the Defendant had red dye "all over the front of him." Based upon all of this, Officer Radens took the Defendant into custody.

Investigator Salvatore arranged for a show-up identification procedure to take place at approximately 2:36 p.m., or about a half an hour after the robbery was reported. In setting up this show-up, Investigator Salvatore testified that he had the Defendant stand outside the bank, approximately ten feet from the bank window that the witnesses would use to view the Defendant. The Defendant was handcuffed behind his back, and two police officers stood next to him. Investigator Salvatore further testified that the pocket of the Defendant's pants was initially turned inside out, and that red dye was visible. However, before the show-up procedure

---

[1] As part of this review, I have considered all of the parties' submissions to date, as well as the transcript of the suppression hearing.

actually started, the Defendant's pockets were pushed back inside his pants so that the red dye was not visible.   Investigator Salvatore testified that he could not see any red dye on the Defendant's pants from where the witnesses would later view the Defendant.   From that vantage point, the witnesses could see the Defendant from the top of his head to approximately his thigh area.   There were no visual obstructions between the Defendant and the witnesses' viewing location, and the weather that day was clear.

There were four witnesses who would later view the Defendant as part of this show-up procedure, who waited in a separate area of the bank, away from the viewing area.   When the procedure was set up and ready, Investigator Salvatore took the witnesses one at a time to the viewing area.   The only instructions given to the witnesses by Investigator Salvatore were to inform him if they recognized the individual, and if so, from where.   No officer other than Investigator Salvatore spoke to the witnesses.   Investigator Salvatore was present for the entire procedure, and after one witnesses viewed the Defendant, that witness was taken to a separate area, and did not rejoin the witnesses who had not yet viewed the Defendant.   Through this procedure, two witnesses identified the Defendant as the bank robber, one witness stated "I think that's him," and another failed to identify the Defendant as the robber.

The prior identification of a defendant is generally admissible under Fed. R. Evid. 801(d)(1)(C).   An identification will only be excluded if the procedure that produced the identification is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 302 (1967); *see also United States v. Maldonado–Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). Even if the procedure was unnecessarily suggestive, the evidence may still be admitted "if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability." *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991); *see generally Manson v. Brathwaite*, 432

U.S. 98, 114 (1977) ("reliability is the linchpin in determining the admissibility of identification testimony"). In other words, in determining whether a pretrial identification is admissible, "the court must first determine whether the pretrial identification procedures *unduly and unnecessarily* suggested that the defendant was the perpetrator." *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009), quoting *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001) (emphasis added).

"Exigent circumstances generally weigh in favor of concluding that a show-up identification procedure was not unnecessarily suggestive, because a show-up procedure may be necessary in such circumstances to quickly confirm the identity of a suspect, or to ensure the release of an innocent suspect." *Brisco*, 565 F.3d at 88. To that end, courts have routinely upheld show-up procedures that, while suggestive, were not unnecessarily so. For example, in *United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994), the Second Circuit found a show-up procedure not to be unnecessarily suggestive where the suspects were handcuffed, held in the custody of law enforcement officers, had their faces illuminated by flashlights, and after the witness identified a suspect, the officers radioed to his fellow officers "It's a hit." In finding the procedure to be admissible, the Circuit noted that it has specifically required law enforcement officers to take "immediate reasonable efforts to confirm the suspect's identify," and under the facts presented, found that the procedure was not unnecessarily suggestive. *Id.*

The Defendant's objection in this case principally relies on *Bratcher v. McCray*, 419 F. Supp. 2d 352 (W.D.N.Y. 2006), where on *habeas* review, Magistrate Judge Victor Bianchini found a show-up procedure to be unduly suggestive. The Defendant argues that *Bracther* is "most analogous" to this case, and that because the Defendant here was "in handcuffs, standing alongside two police officers, the show-up procedure was conduct[ed] 30 minutes after the reported robbery, and [the Defendant] was still wearing clothing that the witnesses described prior to the show-up procedure," that it was unduly suggestive. I disagree.

While there are some similarities between this case and *Bratcher*, the case is also easily distinguishable. For instance, the four witnesses involved in the show-up in *Bratcher* all viewed the defendant in that case at the same time – during which one witness blurted out "That's him!" in front of the other witnesses, and before the other three witnesses had a chance to make (or not make) their identifications. *Bratcher*, 419 F. Supp. 2d. at 359. Further, the defendant in that case was described to the witnesses as wearing a very specific and distinct piece of clothing – white sneakers with a green Nike swoosh logo – that the defendant was then wearing during the show-up. *Id.* Here, the grey shirt that the Defendant was wearing is not such a distinctive piece of clothing that it would have the same effect as the green and white sneakers described in *Bratcher*. Further, the officers involved in the show-up employed in this case took reasonable and prudent steps to minimize the suggestiveness of the procedure. While the Defendant was handcuffed, he was handcuffed behind his back (and presumably the handcuffs were out of view of the witnesses); his pockets were tucked in so that none of the red dye was visible[2] to the witnesses; the witnesses were not able to view any other witnesses' identifications nor talk to each other about the procedure; and the witnesses were simply asked if they recognized the individual presented or not. The facts in *Bracther*, where witnesses were kept together, able to blurt out an identification in front of other witnesses, and with distinct clothing that was discussed, are significantly different than this case. Further, it is also worth noting that while the court found the procedure employed in *Bratcher* to be unduly suggestive, it nevertheless

---

[2] While Officer Radens testified that the Defendant had red dye "all over the front of him" and confirmed that his report reflected that he saw red dye covering the skin of the Defendants' entire right leg and sock, Investigator Salvatore testified that after tucking Defendant's pockets back inside his pants, that *no* red dye was visible on the Defendant from the vantage point of the witnesses who participated in the show-up identification procedure, and he further testified that the Defendant was only visible to the witnesses from the top of his head to his waist level and "a little bit of the thigh area." Critically, Investigator Salvatore was asked "Could you see the dye on the outside of the [Defendant's] pants as you stood at the window [where the witnesses would view the Defendant]?," to which he responded "no."

admitted one of the eyewitness' identifications – a point that the Defendant omitted from his description of the facts of that case.

Finally, in objectively determining whether the show-up procedure in this case was unnecessarily suggestive, it is certainly worth noting that one of the four witnesses in this case *failed* to identify the Defendant. While this one failed identification is not determinative, it is certainly persuasive evidence that further demonstrates that the procedure employed by the police was not unnecessarily or unduly suggestive[3].

Based upon all of the foregoing, I find that the show-up procedure employed on August 23, 2011 was not unnecessarily or unduly suggestive, and I therefore accept and adopt the Report and Recommendation filed by United States Magistrate Judge Marian W. Payson (Dkt. #58) in its entirety. Defendant's motion to suppress the identification procedure and identification evidence (Dkt. #44) is DENIED.

IT IS SO ORDERED.

DATED:       Rochester, New York
             August 25, 2014

_____
HON. FRANK P. GERACI, JR.
United States District Judge

---

[3] Having found the show-up not to be unnecessarily suggestive, I need not consider the government's alternative argument that the procedure nonetheless possessed sufficient indicia of reliability.